MH Global LLC v. U.S. Food and Drug Administration is the first one up. Good morning. I'd like to reserve two minutes for rebuttal, if I could, please. All right. I'll try to help you out, but keep your eye on the clock, please. Will do, Your Honor. May it please the Court. FDA's comparative efficacy standard is both procedurally and substantively infirm. Procedurally, I'm going to focus my comments today on the procedural aspect primarily. Procedurally, it is a rule adopted without notice and comment in violation of the APA and or FDA's own good guidance regulations at 21 CFR Section 10.115. Substantively, it is inconsistent with, under Loper-Bright, the best meaning of the Tobacco Control Act's appropriate for the protection of the public health or APPH standard because it fails to fully account... Is notice and comment required if it's a case-by-case application? It is, Your Honor. In other words, the evidentiary record may be the same, in which case the analysis looks very similar, or it may look very different, and the FDA examines each one. So, Your Honor, I have two-part answer to that. First of all, we don't believe it's case-by-case adjudication here. It's adoption of a rule that then governed the case-by-case adjudication, and I can cite several cases where courts have found that to be improper. But secondly, even if the Court were not convinced by that and thought it was case-by-case adjudication, under 21 U.S.C. Section 387G, which is the Tobacco Product Standard provision of the Tobacco Control Act, notice and comment would still be required, even if the Court were convinced that this were, in fact, case-by-case adjudication. This overall rule versus adjudication issue, and then that specific issue of Section 387G, was specifically what the Supreme Court said it was not addressing in the wages decision. Can you address the distinction that you see between a regulation versus the development of evidentiary standards and how you think this may fall on the regulation side versus the standard side that's applied in each case? In terms of a rule versus adjudication, Your Honor, I'm trying to understand. Right. A regulation that may require notice and comment versus their ability to develop evidentiary standard, I think that's pretty well established. Correct, Your Honor. In the Gallo case from this Court, 349 F. 3rd, 1169, there's a three-part test that's laid out. The first element is whether the government action applies to specific individuals or to unnamed and unspecified persons. Second, whether the promulgating agency considers general facts or adjudicates a particular set of disputed facts. And three, whether the action determines policy issues or resolves specific disputes between particular parties. Each of those three elements in this case, when we look at how FDA adopted this standard in the abstract in its August 17, 2021 memorandum, and then while it gave the appearance of and says it has rescinded that memo, it copied verbatim, word for word, the contents of that memorandum into every single technical project lead review supporting a denial of a standard in the abstract without looking at the specifics of any particular application, without considering, for example, in our client's case here, that these are bottled e-liquids. And bottled e-liquids did not have the same degree of attractiveness to youth and youth risk per FDA's own surveys and federal government's own surveys and data as, for example, cartridge-based ends products that were the subject of FDA's 2020 enforcement guidance. FDA said basically all flavored products, regardless of type, have a high fixed and immutable risk. It didn't look at, in applying the standard then and what it claims were the case-by-case adjudications that led to the denial orders, didn't look at the specifics of the nature of the product under review, but said that that risk is just fixed at that amount, so we need this evidence benefit as part of the statutory inquiry. But that's not, adjudication would be looking at, okay, what sort of product do we have in front of us? Do we have a cartridge-based product where there was significant evidence of high risk of youth per FDA's own guidance earlier that year, or do we have a bottled e-liquid product, which is only a component that itself can't even be, you have to match it with the device, obviously, to be consumed by the user. And so that's the difference. This is adopted in the abstract. The Supreme Court in the United States v. Florida East Coast Railway Co. said, described a situation like this as the formulation of a basically legislative-type judgment for prospective application only. And we submit that's exactly what FDA did in the abstract through this August 17, 2021 memo. And then it just took that determination, that standard, and applied it to all of the applications to issue denial orders for hundreds of applicants and over a million discrete applications for discrete products after that. I would point this court, I think the Fifth Circuit's opinion in the R.J. Reynolds vapor case is particularly instructive on this point. It was an opinion written by Judge Jones that walked through all of this. And while the issue of whether it's a legislative or substantive rule versus an interpretive rule was not before the court, basically the Fifth Circuit, and it was unanimous motions panel, concluded this was a substantive rule. This wasn't a heightened evidentiary standard that was a substantive rule. That case is still good law in light of the Supreme Court's wages case. And we think that that conclusion should control here. Even though, that said, even if the court concludes that this is an interpretive rule, that's where FDA's own regulation comes into play. FDA effectively handcuffed itself. Sure, a federal agency can go and do case-by-case adjudication. That's clear. That's not in But what FDA says in its good guidance regulation is that it is not going to communicate, quote, new or different regulatory expectations not readily apparent from the statute, other than through a notice and comment guidance, a guidance that goes through that process. And that's what FDA failed to do here. And it's telling that FDA did go through that process through a guidance that it finalized in 2019 that said nothing about this requirement. And in fact, more recently, in March of this year, FDA has put out a draft guidance that talks about, okay, what level of comparative efficacy do you need depending on the flavor? And I realized last night we didn't put in a 28J letter on that. I'm happy to do that after the hearing today just to bring that guidance to the court's attention. But it's clear, and I think the Supreme Court confirmed that this is a new or different regulatory expectation in it said, and I cite 604 U.S. at 572 and 581, the Supreme Court said it is hard to find any specific commitments about exactly what sorts of scientific evidence an applicant would have to provide. And it also said FDA did not, quote, lay down any clear test. So to the extent that FDA now comes before this court and says, well, this should have been clear from the statute, I think the Supreme Court has already foreclosed that argument. And if it's not clear from the when it conveys that requirement to the regulated industry, and that's clearly what it failed to do here. So regardless of whether it's a substantive rule or an interpretive rule, either way, either under APA or under their own regulations, FDA had to go through notice and comment, and it failed to do so here. And that requires that the court set aside the denialers and remand back to the agency. Some cases that I think are helpful on this point of a rule that then is applied in adjudications later are not only R.J. Reynolds' vapor case that I mentioned. You know, the FDA relies on some NLRB cases on this issue. There's a very recent decision out of the Sixth Circuit called Brown-Forman Corp. v. NLRB, it's 169F4-646, where the Sixth Circuit found, and it's just from the last couple of months, where the Sixth Circuit found that the NLRB had done exactly that. The NLRB comes up with standards through adjudications, but looking at the facts in that particular instance, which had to do with a unionization vote, and then what the remedy was when the NLRB concluded that the employer had unlawfully interfered with that vote in that process, is the Sixth Circuit said, and it's a very thorough opinion, I'd highly recommend it, the Sixth Circuit said, the NLRB created this forward-looking standard that wasn't at all based on the particular facts in front of it, even though it was purportedly in an adjudication, and that that was improper. That even though it's all in supposedly the confines of an adjudication, that the nature of the standard that it set wasn't based on the facts in front of it, and it was intended to apply... Let me ask you this, counsel, because you're running out of time, and I know you wanted to save some as well, but I want to take up a little more of that time by asking you this. Assuming we don't agree with you on the notice and comment argument, on this particular record, can you help me understand what evidence was not considered by the FDA that would be outcome determinative? FDA failed to consider anything other than the lack of this comparative efficacy evidence, and I'll point the court to actually the declaration and some of the supporting documents that are at ECF number 13 in support of the motion for stay that was filed way back in, I think, 2021 or early 2022, the declaration of Matthew Halverson, but there are things like harmful and potentially harmful constituent data, stability study data, quantitative risk assessments, toxicological data, all of these things showing that these products are substantially less harmful than the combustible cigarettes that MH Global wants users of those cigarettes to migrate to this product. There was a lot of... There was a lot of... A lot of that was considered because all FDA was looking for under its standard was, is there longitudinal data comparing this flavored product to a tobacco flavored product? And if there wasn't, then it was thrown out of the queue, as it were. All right. I'll give you two minutes back. Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honors. May it please the court. I'm Josh Koppel for the FDA. FDA denied petitioner's applications to market flavored e-cigarettes and flavors like caramel cream and cake batter cannoli after undertaking the public health inquiry that's required by the statute. The Supreme Court's decision in wages and this court's decision in lotus vaping are factually and legally indistinguishable, and there's no basis to reach a different decision in this case. I'm going to start really quickly on the substantive challenge, just to say that there's no dispute here over the meaning of the Tobacco Control Act. FDA agrees that the public health analysis is meant to be a population level analysis, and FDA would have considered any evidence submitted to FDA about the reach, as petitioner calls it, the reach of flavored e-cigarette products. If petitioner had been able to show that their products would help smokers quit or reduce smoking because their flavored products have a broader reach, FDA would have considered that evidence. There simply was none in the record. Petitioner has failed to point to any evidence that FDA failed to consider. Turning to the procedural notice and comment. I'm not sure if it's outcome determinative, but that's why I asked the question, right? There's the challenge to the framework and the differential comparison analysis, and there's the notice of comment issue, but what I hear counsel is saying is that even assuming that the FDA conducted the proper inquiry, there was evidence in the record that's outcome determinative. So, I don't think that's correct at all. For one thing, this is exactly the same analysis that FDA conducted in the wages case in Lotus Vaping. FDA explained that if, so they refer to the harmful and potentially harmful constituents, for example, the HPHCs. It's true as a general matter, e-cigarettes are less toxic than combustible cigarettes, but if the e-cigarettes don't help smokers quit smoking or reduce smoking, they don't get the benefit of using a less harmful product. And so that's kind of this threshold inquiry that the FDA was looking for or was conducting in wages, in Lotus Vaping, and here, and Petitioner didn't show that their product would help existing smokers move away from smoking to take advantage of a less harmful product. Right, because at the end of the day, is it because the statute dictates that the risk-benefit analysis be done as the population as a whole? That's correct. That's correct. And so if Petitioner's product is simply going to be used by existing smokers as an additional tobacco product that they use or by new tobacco users, that's not going to benefit the population as a whole. That's absolutely correct. So there's no dispute about the meaning of the public health standard. Petitioner simply didn't introduce evidence in the record. They haven't pointed to any evidence here that, you know, that would have moved, that would have satisfied their burden. Counselor, what's your response to the Petitioner's argument on the rulemaking point that the FDA was required by its own regulations, that's 21 CFR 10.115E, the good guidance practices, that FDA is required by that regulation to proceed through rulemaking in this case? Yeah, so the regulation provides that when FDA communicates new or different regulatory expectations to a broad public audience for the first time, that's a quote, when FDA communicates to the public these expectations for the first time, it has to do so through a guidance document that went through notice and comment. But Petitioner hasn't pointed to any guidance document where FDA communicated to the public. They identify the August 17th memo. That was an internal memo. And so, you know, they simply don't identify a communication with a broad public audience that would have been required to go through notice and comment under this regulation. You know, adjudicating a specific application, such as Petitioner's application, or any other e-cigarette manufacturer's application, again, not a communication with a broad public audience intended to communicate new regulatory expectations. It's simply an adjudication of the application before FDA. On the notice and, the APA notice and comment, notice and comment argument, there's no dispute, as wages makes clear, that FDA was permitted to proceed by adjudication and figure out how the TCA's public health standard applies to flavored e-cigarettes as it works through the applications. And that's exactly what it did here. If you take a look at the technical project lead review, which supports the marketing denial order, you'll see that FDA applied the statutory standards, the same ones the Supreme Court and this Court recognized require comparing the risks and benefits of a new tobacco product to those of other tobacco products, that FDA applied that standard to the application here. And given that the denial order is fully supported by that analysis, there's no basis to grant Petitioner relief here. So Petitioner contends the FDA issued a rule through this August 17th memo, but FDA rescinded that memo, and it represented that it didn't rely on the memo in adjudicating Petitioner's application. And as the Supreme Court explained in the memo, Petitioner's made a strong showing of bad faith or improper behavior, which Petitioner has not. In any event, the August 17th memo was itself prepared in the course of adjudications. It was at most an interpretive rule, if it was a rule at all. But I don't think the Court needs to get to any of that, again, because the memo was rescinded only days after it was issued. And Petitioner can only really challenge the order under review on the basis of the order itself and the Technical Project Lead Review that supports that order. So even if that order looks very similar, uses much of the same language as the August 17th memo, if the TPL review, the Technical Project Lead Review, you know, fully supports the marketing denial order, there's no basis to vacate the marketing denial order on the basis of some kind of procedural infirmity in another memo that wasn't relied upon in issuing the order here. Petitioner argues that FDA failed to account for the fact that their product is a bottled e-liquid. First of all, that's simply not correct, and the Supreme Court's decision wages makes that clear. Wages explained that FDA addressed this issue in the TPL review here, just as it did in the TPL review in wages, and explained that flavors are attractive to youth across device type, and the Supreme Court found FDA's explanation for that fully supported by the record. The same is true here. Petitioner also argues that FDA relied on general facts. The TCA itself tells FDA that it has to adjudicate these applications based on the information presented in the applications, as well as on the basis of any other information before FDA. So there's nothing wrong with FDA looking at general facts, looking at general studies in combination with the materials in the application here to reach its conclusion, and that's exactly what happened. So basically, FDA determined that flavored products present a substantial risk to youth. If your product's going to present a substantial risk, then to be appropriate for the protection of the public health, it's got to present an even greater substantial benefit to the And so, first of all, some flavored manufacturers have actually reduced the risk to youth, mitigated the risk. That's true in the glass products that were recently authorized that we submitted a 28-J letter about, but this petitioner didn't substantially reduce the risk to youth. So FDA was looking for a substantial benefit, and the potential benefit that petitioner itself has asserted is that their product would help move smokers away from smoking. There simply wasn't evidence to support that. Really quickly, I want to touch on the 387-G issue, which petitioner mentioned, this tobacco product standard issue. This issue has been raised in other cases. It wasn't raised in this case. 387-G is not cited in petitioner's briefs, except it is in a quote from wages, where it's a citation in that quote. But petitioners haven't made a tobacco product standard argument. In this case, I know it is present in the next case, but it's forfeited here. In any event, even if petitioner had made that argument, what FDA did here was not a tobacco product standard, applied tobacco product standard. Tobacco product standard, this is 387-G-A4, tobacco product standard is a requirement governing the construction, components, ingredients, nicotine levels, labeling of a tobacco product. That's fundamentally different from applying the public health inquiry that the TCA requires FDA to apply and just weighing risks and benefits. And that's made clear in Section 387-J. Section 387-J, I believe it's C4, lays out the basis on which FDA can deny an application to market a new tobacco product. One of those is because the manufacturers fail to demonstrate that their product is appropriate for the protection of the public health. Another basis for denial is because the manufacturers fail to comply with the tobacco product standard. So these are just two fundamentally different inquiries. FDA applied the public health inquiry here, it did so through adjudication, and there's no basis to disturb the order that's been challenged. Unless there are further questions, we ask that the court deny the petition for review. All right. Thank you, counsel. Thank you. Judge Huey, to your question about the good guidance practice regulation, my friend said there's no document where FDA communicated to the public. FDA had a press release, and we have a link to that on page 15 of our principal brief, when it issued the very first tranche of denials. And press releases, if you look at that, it's 10.115 are specifically excluded from the definition of guidance documents. And then right around the same time, and this is on page 16 of our principal brief, FDA posted on its website a sample technical project lead review that was virtually identical to MH Global's and every other applicant's. And it appears that that was some sort of half-hearted attempt to get the word out to the industry. But again, none of that went through notice and comment. So FDA bound itself through regulations. They have the force of law, and they applied here. My friend said that the memorandum, the August 17th memorandum, was not relied on in issuing the marketing denial order. That asked the court to turn a blind eye to the copying verbatim of the very contents of that memorandum, literally word for word, into the technical project lead review. Yes, it didn't say we rely on the August 17th memo. It copied the contents of the memo. So that really should get nowhere with this court. I wanted to reiterate the notice and comment issue was never addressed in either the Lotus case or in wages, where the Supreme Court specifically said it was not addressing it. And as to the recent authorization of these glass products, these are complete devices that have, and we put in a 28-J letter on it, that have device access restrictions. We're talking here with these products at issue about bottles of e-liquid that are components to go a device. There's no way, it's a plastic dropper bottle, there's no way to put some sort of electronic lock on it to make sure that people's ID is verified and they're over 21 before they they use it. Finally, on section 387G, 387G references the term properties. There's a good, and so my time's up, I can just finish this thought. There is a strong basis in the language of that statute because the properties, the ingredients, the components, and the properties of these products make them flavored. And FDA has applied this standard now to all applications for all flavored products for the last five years, that this is in fact a tobacco product standard. Thank you. We respectfully ask that the court grant the petition. All right. Thank you very much to both counsel for your argument. The matter is submitted.
judges: NGUYEN, VANDYKE, Huie